FILED
JAMES BONINI
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

2007 MAY 29 P 1: 52

UNITED STATES OF AMERICA

vs.

No. **2 : 0 7 cr 1 2 1**

CHAD WICKLINE
DAN WICKLINE

18 U.S.C. §371
18 U.S.C. §982          **JUDGE MARBLEY**
18 U.S.C. §1341
18 U.S.C. §1343
18 U.S.C. §1956(h)
18 U.S.C. §1956(a)(1)(A)(i)
18 U.S.C. §1956(a)(1)(B)(i)
18 U.S.C. §1956(a)(1)(B)(ii)
18 U.S.C. §1957

I N D I C T M E N T

THE GRAND JURY CHARGES:

COUNT 1

Background

1.    At all times material herein:

(a)  Liberty Resources was a company

established by defendant CHAD WICKLINE in

Canal Winchester, Ohio in early 2003

to market and sell various products over

the internet.

(b)  Liberty Resources had a website,

www.libertyresources.com, that marketed

and sold the products to customers over the

internet.

(c) Ridgewood Holdings was a company set up

by a person known to the grand jury to

market and sell various products over the internet.

(d) A person known to the grand jury was an attorney from Washington state who designed a program that purportedly eliminated a person's credit card debt.  He sold the program through his law office, but later sold the program through a company he controlled by the name of Strategic Debt Relief.

(e)  Defendant DAN WICKLINE, was a partner in the credit card debt elimination program of Liberty Resources as well as a sales representative for Liberty Resources.

(f) A person known to the grand jury was a paralegal from Utah who operated a business called Award Enforcement Services, that represented it could take arbitration awards and confirm them in court.

(g) A person known to the grand jury was a businessman from Idaho who owned Coordination Technologies, Inc. and Financial Freedom Concepts, that also represented that he could take

arbitration awards and confirm them in court.

(h) Solomon Arbitration Group was a purported arbitration company located in Montana.

2.    From on or about August, 2003 and continuing until on or about February 23, 2005, in the Southern District of Ohio, and elsewhere, defendants CHAD WICKLINE, DAN WICKLINE, and others, both known and unknown to the grand jury did willfully, knowingly and unlawfully devise and intend to devise a scheme and artifice to defraud and to obtain money and property, by means of false and fraudulent pretenses, representations and statements made to customers of Liberty Resources in selling, marketing and managing a credit card debt elimination program well knowing that the statements and representations made to the customers were false and fraudulent when made.

3.    In furtherance of said scheme and artifice to defraud, CHAD WICKLINE, DAN WICKLINE, and others, both known and unknown to the grand jury, in August 2003, agreed to become sales representatives for the person referenced in paragraph 1(d) of this Count to sell and market his credit card debt elimination program.

4.    It was a further part of the scheme and artifice that CHAD WICKLINE'S business website, Liberty Resources, was

used to promote and sell the credit card debt elimination program referenced in paragraph 3 of this Count over the internet and that Ridgewood Holdings, the business referenced in paragraph 1(c) of this Count, was used to market and help sell the program.

5.   It was a further part of the scheme and artifice that the telephone number appearing on the website as a contact number connected to either Liberty Resources in Ohio or Ridgewood Holdings in Rhode Island in late 2003; and that later on in 2004, it also connected to Coordinated Technologies, Inc./Financial Freedom Concepts, Inc. in Idaho.

6.   It was a further part of the scheme and artifice that false testimonials were placed on the Liberty Resources website to induce customers to purchase the credit card debt elimination program.

7.   It was a further part of the scheme that customers purchasing the credit card debt elimination program mailed a signed Service Agreement along with a payment to 6478 Winchester Boulevard, Canal Winchester, Ohio 43110 that actually was a mail box maintained at a UPS store in Canal Winchester.

8.   It was a further part of the scheme and artifice that Solomon Arbitration Group (SAG) awarded judgments in favor of every Liberty Resources customer that timely submitted claims and correctly followed the procedure outlined by Liberty Resources until the late fall of 2004 when SAG began losing

4

various lawsuits in California and Idaho and was enjoined from attempting in any manner to engage in arbitration or debt-avoidance activities.

9.   It was a further part of the scheme and artifice that CHAD WICKLINE, DAN WICKLINE and others, both known and unknown to the grand jury, discontinued their business association with the person referenced in paragraph 1(d) of this Count and the company he controlled, Strategic Debt Relief, in the early part of 2004 and marketed, sold and managed a credit card debt elimination program through Liberty Resources and Ridgewood Holdings that was virtually identical to the credit card debt elimination program referenced in paragraph 3 of this Count.

10.   It was a further part of the scheme and artifice that the defendants, CHAD WICKLINE, DAN WICKLINE and persons known to the grand jury hired the person referenced in paragraph 1(f) of this Count and her company, Award Enforcement Services, in February, 2004 to prepare legal documents for Liberty Resources customers to file in court to attempt to confirm their SAG awards.

11.   It was a further part of the scheme and artifice that after the person referenced in paragraph 1(f) of this Count, demanded more money sometime in June, 2004 for continued services, without any success in confirming SAG awards, the

defendants, CHAD WICKLINE, DAN WICKLINE and persons known to the grand jury hired the person referenced in paragraph 1(g) of this Count and his companies Coordinated Technologies, Inc. and Freedom Financial Concepts to prepare the legal documents for Liberty Resources' customers and thereafter file them in court on their behalf.

12.   On or about November 11, 2003, the exact date being unknown to the grand jury, in the Southern District of Ohio, CHAD WICKLINE, DAN WICKLINE and others, both known and unknown to the grand jury, having devised and intending to devise a scheme and artifice to defraud Liberty Resources customers and to obtain money and property, by false and fraudulent pretenses and representations did, for the purpose of executing said scheme and artifice to defraud, caused certain signs, signals and sounds, to wit, the posting of false testimonials regarding the success of the Liberty Resources credit card debt elimination program on the Liberty Resources website that was then transmitted in interstate commerce by wire or radio from Columbus, Ohio and broadcast to points throughout the United States over the internet.

In violation of 18 U.S.C. §1343 and 18 U.S.C. §2.

<u>COUNT 2</u>

1.   Paragraph 1 of Count 1 is realleged and incorporated herein by reference.

2.    During the month of August, 2003 and continuing to approximately March, 2005, in the Southern District of Ohio and elsewhere, the defendants, CHAD WICKLINE, DAN WICKLINE, and others, both known and unknown to the grand jury, did willfully and knowingly combine, conspire, confederate and agree together and with each other to commit offenses against the United States, hereinafter described, that is:

(a)  to commit mail fraud in violation of 18 U.S.C. §1341; and,

(b)  to commit wire fraud in violation 18 U.S.C. §1343.

### Object of the Conspiracy

3.    The object of the conspiracy was to obtain money and property by false and fraudulent pretenses from the customers of Liberty Resources.

### Overt Acts

4.    In furtherance of and to effect the object of the conspiracy, the defendants did cause the following overt acts to be committed:

(a)  On or about November 4, 2003 defendant a person known to the grand jury emailed false testimonials to a Liberty Resources associate to be placed on the Liberty Resources website.

(b)  During the month of March, 2004, the exact date

7

being unknown to the grand jury, defendant DAN WICKLINE met with a person known to the grand jury at a Bob Evans restaurant in Pickerington, Ohio to sell that person the Liberty Resources credit card debt elimination program.

(c)   On or about March 8, 2004, CHAD WICKLINE, DAN WICKLINE and others known and unknown to the grand jury participated in a telephone conference call with the person referenced in paragraph 1(f) in Count 1 to discuss the Liberty Resources credit card debt elimination program and how to market the plan to potential customers.

(d)   During the month of June, 2004, the exact date being unknown to the grand jury, a disclaimer approved by CHAD WICKLINE, DAN WICKLINE and others known and unknown to the grand jury was placed on the Liberty Resources website by a person known to the grand jury.

(e)   On or about August 13, 2004 CHAD WICKLINE opened a bank account at US Bank in Pickerington, Ohio in the name of Wage International.

(f)   On or about August 16, 2004, CHAD WICKLINE and others known and unknown to the grand jury participated in a telephone conference call with employees of Coordinated Technologies, Inc. regarding business between Liberty Resources and Coordinated Technologies, Inc.

(g)   On or about October 8, 2004, CHAD WICKLINE sent an

email to the person referenced in paragraph 1(g) of Count 1 regarding his research to find a way around a judge's order throwing out an arbitration award.

(h)  On or about November 3, 2004, CHAD WICKLINE sent an email to a person known to the grand jury indicating that Liberty Resources was still accepting new representatives.

(i)  On or about February 16, 2005, CHAD WICKLINE directed a person known to the grand jury to delete information from the Liberty Resources website.

In violation of 18 U.S.C. §371.

<u>COUNT 3</u>

1.    Paragraphs 1 through 11 in Count 1 of this indictment are realleged and incorporated herein by reference.

2.    On or about January 30, 2004, the exact date being unknown to the grand jury, in the Southern District of Ohio the defendant, CHAD WICKLINE and others, both known and unknown to the grand jury, for the purpose of executing said scheme and artifice to defraud, did knowingly cause to be delivered by the United States Postal Service by mail, according to the directions thereon, an envelope addressed to Liberty Resources, 6478 Winchester Blvd., Suite 111, Canal Winchester, Ohio 43110 containing a signed Service Agreement and a check for approximately $3,700.00, from Martin Smith, made out to Liberty Resources in partial payment of the Liberty Resources credit card

debt elimination program.

In violation of 18 U.S.C. §1341 and 18 U.S.C. §2.

### COUNT 4

1.    Paragraphs 1 through 11 in Count 1 of this indictment are realleged and incorporated herein by reference.

2.    On or about February 9, 2004, in the Southern District of Ohio, the defendant, CHAD WICKLINE, and others, both known and unknown to the grand jury, for the purpose of executing said scheme and artifice to defraud, did knowingly cause to be delivered by the United States Postal Service by mail, according to the directions thereon, an envelope addressed to Liberty Resources, 6478 Winchester Blvd., Suite 111, Canal Winchester, Ohio 43110 containing a signed Service Agreement and a check for approximately $2,000.00 from John Morales, III, made out to Liberty Resources in partial payment for the Liberty Resources credit card debt elimination program.

In violation of 18 U.S.C. §1341 and 18 U.S.C. §2.

### COUNT 5

1.    Paragraphs 1 through 11 in Count 1 of this indictment are realleged and incorporated herein by reference.

2.    On or about May 20, 2004 in the Southern District of Ohio, the defendant DAN WICKLINE and others, both known and unknown to the grand jury, for the purpose of executing said scheme and artifice to defraud, did knowingly cause to be

10

delivered by the United States Postal Service by mail, according to the directions thereon, an envelope addressed to Liberty Resources, 6478 Winchester Blvd., Suite 111, Canal Winchester, Ohio 43110 containing a signed Service Agreement and a check for approximately $1,200.00, from Michelle Case made out to Liberty Resources in partial payment of the Liberty Resources credit card debt elimination program.

In violation of 18 U.S.C. §1341 and 18 U.S.C. §2.

### COUNT 6

1.   Paragraphs 1 through 11 in Count 1 of this indictment are realleged and incorporated herein by reference.

2.   On or about March 31, 2004, the exact date being unknown to the grand jury, in the Southern District of Ohio the defendant, DAN WICKLINE and others, both known and unknown to the grand jury, for the purpose of executing said scheme and artifice to defraud, did knowingly cause to be delivered by the United States Postal Service by mail, according to the directions thereon, an envelope addressed to Liberty Resources, 6478 Winchester Blvd., Suite 111, Canal Winchester, Ohio 43110 containing a signed Service Agreement and a check for approximately $2,752.00 made out to Liberty Resources from Philip Pini in partial payment of the Liberty Resources credit card debt elimination program.

In violation of 18 U.S.C. §1341 and 18 U.S.C. §2.

<u>COUNT 7</u>

1.    Paragraphs 1 through 11 in Count 1 of this indictment are realleged and incorporated herein by reference.

2.    On or about March 8, 2004, in the Southern District of Ohio, the defendants, CHAD WICKLINE, DAN WICKLINE and others, both known and unknown to the grand jury having devised and intending to devise a scheme and artifice to defraud Liberty Resources customers and to obtain money and property, by false and fraudulent pretenses and representations did, for the purpose of executing said scheme and artifice to defraud, cause certain signs, signals and sounds to be transmitted in interstate commerce by wire or radio from Ohio to various points throughout the United States, which signs, signals and sounds transmitted a conference telephone call between the defendants, CHAD WICKLINE, DAN WICKLINE, a person referenced in paragraph 1(f) of Count 1, and others, both known and unknown to the grand jury, and various sales representatives of Liberty Resources discussing the Liberty Resources program and the various marketing and selling points the sales representatives were to make with potential Liberty Resources customers.

In violation of 18 U.S.C. §1343 and 18 U.S.C. § 2.

<u>COUNT 8</u>

1.    Paragraphs 1 through 11 in Count 1 of this indictment are realleged and incorporated herein by reference.

2.   On or about August 16, 2004, in the Southern District of Ohio, the defendants, CHAD WICKLINE, DAN WICKLINE and others, both known and unknown to the grand jury having devised and intending to devise a scheme and artifice to defraud Liberty Resources customers and to obtain money and property, by false and fraudulent pretenses and representations did, for the purpose of executing said scheme and artifice to defraud, cause certain signs, signals and sounds to be transmitted in interstate commerce by wire or radio from Ohio to Idaho, which signs, signals and sounds transmitted a conference telephone call between the defendants, CHAD WICKLINE, DAN WICKLINE, a person referenced in paragraph 1(g) of Count 1, and others, both known and unknown to the grand jury, and various employees of Coordination Technologies, Inc. (CTI) discussing, among other things, the processing of old and new CTI clients into Liberty Resources' database.

In violation of 18 U.S.C. §1343 and 18 U.S.C. § 2.

COUNT 9

Beginning in January, 2004 and continuing until at least December, 2004, the exact dates being unknown, in the Southern District of Ohio and elsewhere, the defendants, CHAD WICKLINE, DAN WICKLINE and others, both known and unknown to the grand jury, did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with each other,

(a)   to knowingly and willfully conduct
      financial transactions which involved
      proceeds derived from a specified
      unlawful activity, knowing the
      proceeds are so derived, with the
      intent to promote the carrying on
      of said specified unlawful activity,
      that is, conspiracy to commit wire
      fraud and mail fraud, in violation
      of 18 U.S.C. §371 and wire fraud,
      in violation of 18 U.S.C. §1343,
      and mail fraud in violation of
      18 U.S.C. §1341, all in violation
      of 18 U.S.C. §1956 (a)(1)(A)(i);

(b)   to knowingly and willfully conduct
      monetary transactions which involve
      criminally derived property of a
      value greater than $10,000.00 and
      is derived from specified unlawful
      activity, in violation of 18 U.S.C.
      §1957;

(c)   to knowingly and willfully conduct
      financial transactions which involve
      proceeds derived from a specified
      unlawful activity, that is conspiracy
      to commit wire fraud, in violation of
      18 U.S.C. §1343, and mail fraud, in
      violation of 18 U.S.C. §1341, knowing
      the proceeds are so derived, which
      transactions were designed in whole
      or in part to avoid a transaction
      reporting requirement under State
      or Federal law, in violation of 18
      U.S.C. §1956(a)(1)(B)(ii); and,

(d)   to knowingly and willfully conduct
      financial transactions which involve
      proceeds derived from a specified
      unlawful activity, knowing the
      proceeds are so derived, which
      transactions were designed in whole
      or in part to conceal, or disguise
      the nature, the location, the source,
      the ownership or the control of the
      proceeds of said specified unlawful
      activity, that is, wire fraud, in

14

> violation of 18 U.S.C. §1343
> and mail fraud in violation of 18 U.S.C.
> §1341 and conspiracy to commit mail
> fraud and wire fraud, in violation
> of 18 U.S.C. §371, all in violation
> of 18 U.S.C. §1956 (a)(1)(B)(i).

It was a part of the conspiracy that the defendants, CHAD WICKLINE, DAN WICKLINE and others, both known and unknown to the grand jury would receive thousands of dollars from the sale of the Liberty Resources credit card debt elimination program.

It was a part of the conspiracy that CHAD WICKLINE and a person known to the grand jury maintained a Liberty Resources/Preston Edwards bank account at Huntington Bank, Pickerington, Ohio.

It was a further part of the conspiracy that the defendants, CHAD WICKLINE, DAN WICKLINE and others, both known and unknown to the grand jury, used the monies derived from the sale of the Liberty Resources credit card debt elimination program to pay for marketing services, sales commissions, and office maintenance, as well as split any profits of the program.

It was a further part of the conspiracy that various checks written on the Liberty Resources checking account were written for just less than $10,000.00 in order to avoid the generation of an Internal Revenue Service Currency Transaction Report, a report required by federal law to be generated on financial transactions over $10,000.00.

It was a further part of the conspiracy that defendant

CHAD WICKLINE opened a separate bank account under the name of Wage International at US Bank, Pickerington, Ohio, in August, 2004, and that such bank account was principally funded with money obtained from the Liberty Resources/Preston Edwards bank account at Huntington Bank.

In violation of 18 U.S.C. §1956(h).

### COUNT 10

On or about February 13, 2004, in the Southern District of Ohio, CHAD WICKLINE did knowingly and willfully conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit, causing a payment to be made to CHAD WICKLINE via a Liberty Resources check, number 1330, drawn on the Liberty Resources/Preston Edwards checking account at Huntington Bank, Pickerington, Ohio, which financial transaction involved the proceeds of a specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. §1343, and mail fraud, in violation of 18 U.S.C. §1341, and conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. §371, with the intent to promote the carrying on of the specified unlawful activity, and while conducting and attempting to conduct the financial transaction, CHAD WICKLINE knew that the property involved in the financial transaction, that is funds in the amount of $6,092.22 represented the proceeds of some form of unlawful activity.

In violation of 18 U.S.C. §1956(a)(1)(A)(i).

## COUNT 11

On or about March 12, 2004, in the Southern District of Ohio, CHAD WICKLINE and a person known to the grand jury did knowingly and willfully conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit, causing a payment to be made to CHAD WICKLINE via a Liberty Resources check, number 1647, drawn on the Liberty Resources/Preston Edwards checking account at Huntington Bank, Pickerington, Ohio, which financial transaction involved the proceeds of a specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. §1343, and mail fraud, in violation of 18 U.S.C. §1341, and conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. §371, with the intent to promote the carrying on of the specified unlawful activity, and while conducting and attempting to conduct the financial transaction, CHAD WICKLINE knew that the property involved in the financial transaction, that is funds in the amount of $10,000.00 represented the proceeds of some form of unlawful activity.

In violation of 18 U.S.C. §1956(a)(1)(A)(i) and 18 U.S.C. §2.

## COUNT 12

On or about April 30, 2004, in the Southern District of Ohio, the defendant, CHAD WICKLINE did knowingly and

willfully conduct and attempt to engage in a monetary transaction, affecting interstate commerce, in criminally derived property of a value greater than $10,000.00, that is, a payment made to CHAD WICKLINE via a Liberty Resources check, number 1774, drawn on the Liberty Resources/Preston Edwards checking account at Huntington Bank, Pickerington, Ohio in the amount of $20,200.00, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. §1343, and mail fraud, in violation of 18 U.S.C. §1341 and conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. §371.

In violation of 18 U.S.C. §1957 and 18 U.S.C. §2.

### COUNT 13

On or about April 30, 2004, in the Southern District of Ohio, the defendant, DAN WICKLINE and a person known to the grand jury, did knowingly and willfully conduct and attempt to conduct a financial transaction, that is, causing a payment to DAN WICKLINE via a Liberty Resources check, number 1773, drawn on the Liberty Resources/Preston Edwards checking account at Huntington Bank, Pickerington, Ohio which involved the proceeds of a specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. §1343, mail fraud, in violation of 18 U.S.C. §1341, and conspiracy to commit mail fraud and wire fraud, in violation of

18 U.S.C. §371, knowing that the transaction was designed in whole and in part to avoid a transaction reporting requirement under State or Federal Law, and that while conducting and attempting to conduct such financial transaction, DAN WICKLINE knew that the property involved in the financial transaction, that is, funds in the amount of $9,999.99, represented the proceeds of some form of unlawful activity.

In violation of 18 U.S.C. §1956(a)(1)(B)(ii) and 18 U.S.C. §2.

### COUNT 14

On or about April 30, 2004, in the Southern District of Ohio, the defendant, DAN WICKLINE and a person known to the grand jury, did knowingly and willfully conduct and attempt to conduct a financial transaction, that is, causing a payment to DAN WICKLINE via a Liberty Resources check, number 1777, drawn on the Liberty Resources/Preston Edwards checking account at Huntington Bank, Pickerington, Ohio which involved the proceeds of a specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. §1343, and mail fraud, in violation of 18 U.S.C. §1341, and conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. §371, knowing that the transaction was designed in whole and in part to avoid a transaction reporting requirement under State or Federal Law, and that while conducting and

attempting to conduct such financial transaction, DAN WICKLINE knew that the property involved in the financial transaction, that is, funds in the amount of $9,999.99, represented the proceeds of some form of unlawful activity.

In violation of 18 U.S.C. §1956(a)(1)(B)(ii) and 18 U.S.C. §2.

<u>COUNT 15</u>

On or about July 2, 2004, in the Southern District of Ohio, the defendant, DAN WICKLINE and a person known to the grand jury, did knowingly and willfully conduct and attempt to engage in a monetary transaction, affecting interstate commerce, in criminally derived property of a value greater than $10,000.00, that is, a payment made to DAN WICKLINE via a Liberty Resources check, number 1927, drawn on the Liberty Resources/Preston Edwards checking account at Huntington Bank, Pickerington, Ohio for sales services, in the amount of $12,500.00, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. §1343, and mail fraud, in violation of 18 U.S.C. §1341 and conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. §371.

In violation of 18 U.S.C. §1957 and 18 U.S.C. §2.

<u>COUNT 16</u>

On or about August 20, 2004, in the Southern District of Ohio, the defendants CHAD WICKLINE and DAN WICKLINE, did knowingly and willfully conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit, a payment made to DAN WICKLINE via a Wage International check, number 103, drawn on the Wage International checking account at US Bank, Pickerington, Ohio which involved the Liberty Resources proceeds of wire fraud, in violation of 18 U.S.C. §1343, mail fraud, in violation of 18 U.S.C. §1341, and conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. §371, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, source, ownership and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction, that is, a check in the amount of $10,000.00, represented the proceeds of some form of unlawful activity.

In violation of 18 U.S.C. §1956(a)(1)(B)(i) and 18 U.S.C. §2.

## COUNT 17

As a result of the offenses in Counts 2 and 9, the defendants, CHAD WICKLINE and DAN WICKLINE shall forfeit to the United States pursuant to 18 U.S.C. §982(a)(1) and §982(a)(8), all property, real or personal, used or intended to be used to commit, to facilitate, or to promote the commission of such offense; and, constituting, derived from or traceable to the gross proceeds that the defendants obtained directly or indirectly as a result of the offense, including but not limited to: $2,200,000.00 in U.S. currency and all property traceable thereto, in that such sum is the property used and intended to be used to commit, to facilitate and to promote the commission of such offense and constitutes and is derived from the gross proceeds the defendants obtained directly or indirectly as a result of the offense.

If any of the above described forfeitable property, as a result of any act or omission of the defendants,

1) cannot be located upon due diligence;

2) has been transferred or sold to, or deposited with, a third person;

3) has been placed beyond the jurisdiction of the Court;

4) has been substantially diminished in value; or

5) has been commingled with other property which

cannot be subdivided without difficulty;
it is the intent of the United States, pursuant to Title 21
U.S.C. §853(p), to seek forfeiture of any other property of said
defendant up to the value of the above forfeitable property.

A TRUE BILL.

/S/ — S/
FOREPERSON

GREGORY G. LOCKHART
United States Attorney

*Gary L Spartis/by Marcia Harris, AUSA*
*per authority 5/29/07*

GARY L. SPARTIS
Deputy Criminal Chief

23