**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | Case No. 2:07-CR-121 |
| v. | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **CHAD WICKLINE,** *et. al.*, | : | **Magistrate Judge Norah M. King** |
| | : | |
| **Defendants.** | : | |

**ORDER**

**I.  INTRODUCTION**

This matter is before the Court on Defendants' Motion to Compel the government to produce cooperating-witness Michael Amato's complete IRS audit and collection files and his IRS account transcripts from 1996 to present.  In order to review this material, Defendants also move for a continuance.  For the reasons set forth below, the Court **DENIES** both of Defendants' motions.

**II.  BACKGROUND**

The United States indicted Defendants on charges of conspiracy, wire fraud, mail fraud, and money laundering for allegedly orchestrating a scheme to defraud individuals struggling with credit card debt.  The government contends that Defendants marketed a Credit Card Debt Elimination Program through Liberty Resources, their corporation, which falsely represented to debtors that they did not have to repay their credit card debt because of a loophole in the banking laws.  Defendants represented to debtors that because national banks were not permitted to lend credit, debtors could seek an arbitration award to invalidate their credit card debt.  The government asserts that Defendants fraudulently induced debtors to pay thousands of dollars for a packet of materials detailing this bogus scheme.

At trial, the government will introduce the testimony of Michael Amato, a co-conspirator who worked under the Wicklines at Liberty Resources and pleaded guilty to charges related to this case. On June 23, 2008, pursuant to its obligation under the Jencks Act, the government produced Amato's Installment Agreement with the IRS, signed November 11, 2006, setting forth the terms and conditions under which he must remit over $800,000 in unpaid taxes, fees, and interest. Defendants allege that the IRS agreed to reduce Amato's considerable tax liability in return for his cooperation in this case. As such, Defendants demand that the government produce Amato's complete IRS tax file so that they may impeach his credibility. The government objects.

### III.  LAW & ANALYSIS

*Brady v. Maryland*, 373 U.S. 83, 87 (1963), famously held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The *Brady* rule, which emanates from the due process requirement, applies with equal constitutional force to evidence that a defendant could use at trial to impeach a government witness. *United States v. Bagley*, 473 U.S. 667, 676-77 (1985). "Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur. Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, *if suppressed*, would deprive the defendant of a fair trial." *Id*. at 675 (emphasis added).

However, the "Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." *Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995). Rather, favorable evidence is material under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. It is undisputed that an express or tacit promise from the government of leniency in another proceeding in return for a witness's cooperation would be subject to disclosure under *Brady*. *See Bell v. Bell*, 512 F.3d 223, 233 (6th Cir. 2008) (en banc) (noting that even if defendant "could prove that [the government and its cooperating witness] reached a mutual understanding, albeit unspoken, that [the witness] would provide testimony in exchange for the district attorney's intervention in a case against him, such an agreement would qualify as favorable impeachment material under *Brady*").

Defendants assert that the government promised to reduce Amato's tax liability provided he cooperate against the Wicklines. They allege that Amato entered into the Installment Agreement shortly before testifying for the government before the grand jury.[1] Defendants further insist that Amato stopped making payments towards his $800,000 debt shortly after signing the Plea Agreement.[2] As such, Defendants demand access to Amato's tax records, which they argue will reveal evidence of the deal with the government.

The government counters that no such agreement exists. Amato signed the Installment Agreement with the IRS in November 2006, when he was still a target of the criminal

---

[1] Defendants however, do not submit the date on which Amato testified before the grand jury, reducing the force of this argument.

[2] Similarly, Defendants introduce nothing to bolster this assertion.

-3-

investigation which led to the indictment of the Wicklines. Six months later, Amato entered into the Plea Agreement with the government in this case. The Plea Agreement makes no mention of Amato's tax liability and there is no evidence to suggest that the IRS altered the terms and conditions of the Installment Agreement following his decision to cooperate against the Wicklines. Further, federal prosecutors state that Amato never demanded leniency in his tax dealings as a condition of his cooperation. The government concludes that because there is no deal, there is no impeachment evidence in Amato's tax records.

Defendants have three responses. First, they contend that the production of Amato's tax files is the only way to ensure that the witness has not struck a secret deal with the government exchanging favorable testimony for leniency from the IRS. The Court will not authorize such a fishing expedition. There is no evidence to support Defendants' naked assertion of a secret deal. Nor have Defendants proffered evidence to show that Amato ceased making payments following his Plea Agreement or that the IRS altered the Installment Agreement after he decided to cooperate. Rather, the timing of the Installment Agreement, which came while Amato was still a target of the government's investigation, the text of the plea agreement, and the avowals of the Assistant United States Attorneys suggest that no such deal exists. "[T]o establish a violation of *Brady*, a defendant must provide the court with some indication that the materials to which he . . . needs access contain material and potentially exculpatory evidence." *United States v. Brandon*, 17 F.3d 409, 456 (1st Cir. 1994). Defendants have not done so.

Second, Defendants argue that discovery of Amato's tax files is the way only to ensure that he will not commit perjury at trial. But this allegation is similarly baseless. There is nothing in the record to suggest that Amato is likely to lie. The Installment Agreement shows

that he evaded taxes for a considerable period of time, resulting in a significant tax liability to IRS. This is enough to raise doubts as to his credibility and impeach him if he denies cheating his taxes. But *Brady* does not permit a defendant to inspect the government's files as a backstop against the possibility of perjury. *See Penn. v. Ritchie*, 480 U.S. 39, 59 (1987) ("[a] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [government's] files"). There is no "constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).

Third, Defendants argue that absent evidence of an agreement, at the very least, Amato's massive tax liability creates a powerful incentive to cooperate with the government in the hope of favorable treatment from the IRS. This is not enough. The Sixth Circuit has recently held "that [a witness's] desire for more favorable treatment in return for his testimony . . . does not, standing alone, demonstrate the existence of an implied agreement." *Bell*, 512 F.3d at 233. In other words, "a witness's expectation of a future benefit is not determinative of the question of whether a tacit agreement subject to disclosure exist[s]." *Id*. Although Amato may be seeking favorable treatment from the IRS, there is no evidence of a corresponding promise or assurance from either the IRS or federal prosecutors. The mere incentive to cooperate, without more, does not implicate *Brady*. Because there is nothing more than Defendants' suspicion to bolster the allegation that the government is suppressing evidence as to an agreement with a cooperating witness to alleviate or reduce his tax liability in return for cooperation, Defendants' motion to compel the government to produce the witness's tax files is denied. Accordingly, there is no need for a continuance.

## IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motions to Compel and for a Continuance.

**IT IS SO ORDERED.**

                                                          s/Algenon L. Marbley
                                                         **ALGENON L. MARBLEY**
                                                         **UNITED STATES DISTRICT JUDGE**

**DATED: June 25, 2008**