UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:07-CR-121 |
| v. ) | |
| ) | |
| CHAD WICKLINE and ) | JUDGE ALGENON MARBLEY |
| DAN WICKLINE, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' JOINT MOTION TO EXCLUDE EVIDENCE
OF AN UNCHARGED CONSPIRACY THAT WOULD
CONFUSE THE JURY AND PREJUDICE THE DEFENDANTS**

COMES NOW Defendants Chad Wickline and Dan Wickline (hereinafter the "Wicklines"), by and through their respective attorneys of record, The Bernhoft Law Firm, S.C. and Ross M. Babbitt Co. LPA, and file this joint motion, pursuant to Rules 402 and 403 of the Federal Rules of Evidence, to exclude anticipated testimony of government witnesses as to an alleged uncharged conspiracy between the Wicklines and customers to allegedly defraud the credit card companies with their personal credit card charges, including, but not limited to, (1) testimony and exhibits from a BMW official concerning BMW's allegations of credit card fraud against Chad Wickline for his use of the BMW credit card, and similar testimony from Mark Browning concerning Wickline's purpose for use of that card;  (2) Mark Browning's alleged fraudulent use of a credit card for technical support services from Ceranet;  and (3) evidence of card usage at Las Vegas hotels.  Indeed, grand jury transcripts disclose this line of questioning from the prosecutor to the special agent identifying the "theme" of the scheme as "you [the

1

customer] can go out and run up a bunch of credit card debt, and then just file these papers and get rid of [the debt]."

This case, as this Court has repeatedly articulated, is only about one conspiracy – an alleged conspiracy by the defendants to defraud customers of their money by fraudulently representing there was a loophole in the banking laws in order to induce their customers to pay them moneys; by contrast, the anticipated testimony would confuse the jury into thinking the charged conspiracy is a conspiracy between the defendants and their customers to defraud credit card issuers, highly prejudice the defendants, and is minimally probative compared to evidentiary alternatives.

## *Old Chief* Stipulation

The Wicklines will stipulate to the following: "Chad Wickline had a credit card with a bank. Chad Wickline then purchased the Hawkins Law Firm's loophole program to eliminate this credit card debt through arbitrating a loophole in the banking laws, invalidating the debt. Chad Wickline signed a retainer with Attorney Hawkins, filled out all the paperwork, disputed his credit card debt pursuant to the loophole, and filed for arbitration with an arbitration company. The arbitration company issued an award in Chad Wickline's favor. Chad Wickline then petitioned a federal court to obtain an order from the federal court affirming the award. In March of 2005, the federal court dismissed the petition on jurisdictional grounds."

As is, this evidence can be separately introduced through Wickline's court filings, and does not require or even benefit from the testimony of the BMW witness, various invoices from the Bellagio and hotels, the objectionable aspects of Mark Browning's testimony, and the ancillary testimony about Mark Browning's own credit card use, through a Ceranet employee.

As the Supreme Court clarified, a court assessing the probative value of evidence against its prejudicial and confusing qualities, the court must consider all evidentiary alternatives, including existing evidence and proffered stipulations, regardless if those stipulations are accepted by the prosecution.  *See Old Chief v. United States*, 519 U.S. 172, 184 (1997).

The Ninth Circuit also articulated the standard: whether the evidence the prosecution seeks to present to the jury is more probative and less prejudicial than the evidentiary alternatives available to the government, which must include proffered stipulations by the defense.  This "pivotal step" in this Rule 403 analysis, especially where a stipulation has been presented by the defense, is to "evaluate the degrees of probative value not only for the item in question but for any actually available substitutes as well."  *United States v. Merino-Balderrama*, 146 F.3d 758, 762 (9th Cir. 1998).  Following *Old Chief*, the Sixth Circuit recognized the proper role of proffered stipulations in this analysis, regardless of the prosecution agreeing to the same.  *See Myers v. United States*, 198 F.3d 615 (6th Cir. 1999).  Indeed, the Sixth Circuit reiterated this critical evidentiary analysis in finding error in a trial court's evidentiary rulings.  *See United States v. Bell*, 516 F.3d 432, 444 (6th Cir. 2008) (citing *Old Chief v. United States*, 519 U.S. 172, 180-81 (1997)).

### **Legal Standard**

The burden of proof for admitting evidence always lies with the proponent of the evidence.  *See United States v. Short*, 790 F.2d 464, 468 (6th Cir. 1986) ("[T]his court has noted that Rule 104 of the Federal Rules of Evidence places the burden of proving relevant preliminary facts on the proponent of the evidence.")  To be admissible, the evidence must:  (1) relate to a fact;  (2) that fact must be "of consequence to the determination of the action"; and (3) the evidence must make that consequential fact more or less probable to be true.  *See* Fed. R. Evid.

401. Evidence that cannot pass this initial threshold of relevance to a fact in consequence is not admissible. *See* Fed. R. Evid. 402. Rule 403 requires a second-level analysis – the proponent of the evidence must also show the evidence, even if probative, not risk unfair prejudice or confusion of the jury, as compared to other evidentiary alternatives.

At all times, in the criminal context, the Constitutional requirement for a fair trial and the unique federal supervisory power over its judicial process further inform the evidentiary analysis. "By far the most important consideration is the impact of any [evidentiary] error upon the right of the defendants to a fair trial." *United States v. Reed*, 647 F.21d 678, 687 (6th Cir. 1981). In *Reed*, the Sixth Circuit condemned the prosecutions tactics because the prosecution "persisted in [a] subtle method of impugning the defendants' characters" by calling witnesses to testify as "to alleged past criminal associations" without bringing up a specific prior bad act. *Id*. The *Reed* court recognized that "[t]he admission of evidence of other wrongful acts, prior misconduct or bad reputation . . . [is] fraught with great risk to the fairness of the trial." *Id*. The Sixth Circuit views such propensity evidence in criminal cases as deeply suspect. "A fundamental rule of evidence is that a defendant's 'bad character' cannot be used to argue that the defendant committed the crime for which he is being tried, or had the propensity to commit that crime." *Washington v. Hofbauer*, 228 F.2d 689, 699 (6th Cir. 2000) (citing Fed. R. Evid. 404(a)). Consequently, the courts compel both relevance and necessity of such evidence be compared to evidentiary alternatives.

> In this respect we agree with the Second Circuit's observation in *United States v. DeVaughn*, 601 F.2d 42, 45 (2d Cir. 1979), that caution and judgment are called for, and **a trial judge faced with another crimes problem** should require the Government to explain why the evidence is relevant **and necessary**."

*Reed*, 647 F.2d at 687 (emphasis added).

This evidence has only impermissible purposes, barely masked propensity evidence and asking the jury to convict for allegedly defrauding credit card companies with their customers as co-conspirators rather than the victims.  As the evidence is minimally relevant, risks unfair prejudice and undue confusion of the jury, and is cumulative to Wickline's court filings and the stipulation already available, it should be excluded.

**B.     The Evidence Creates an Undue Risk of Variance.**

"The Fifth Amendment guarantees that an accused be tried only on those offenses presented in an indictment and returned by a grand jury." *United States v. Chilingirian*, 280 F.3d 704, 711 (6th Cir. 2002) (citing *Stirone v. United States*, 361 U.S. 212, 217-19 (1960)). Allowing the use of evidence supporting conspiracies that are not found in the indictment violate this important rule.  The Wicklines are charged with a conspiracy to defraud their clients not a conspiracy to defraud the credit card companies.  This difference constitutes a variance.  "A variance occurs when the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Barrow*, 118 F.3d 482, 488 (6th Cir. 1997) (internal quotations omitted).

Trial evidence different than the indictment's allegations violates a defendant's Fifth Amendment rights.  "[T]he Constitutional rights of an accused are violated when a modification at trial acts to broaden the charge contained in the indictment." *United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989).

This case is similar to *United States v. Swafford*, 512 F.3d 833 (6th Cir. 2008).  In *Swafford*, the defendant was charged with two conspiracies.  *Id*. at 841.  The first conspiracy was a conspiracy to aid and abet the manufacture of methamphetamine and the second conspiracy was a conspiracy to distribute iodine to be used in the manufacture of methamphetamine.  *Id*.

The proof at trial, however, showed that each methamphetamine manufacturer the defendant did business with did not know of any other manufacturer. *Id*. Consequently, the evidence showed multiple agreements or conspiracies rather than a singe conspiracy because the individual manufacturers' purpose was specific to themselves rather than part of a larger single common goal. *Id*.

The evidence sought by the prosecution in the Wicklines' trial is similar. The indictment alleges one conspiracy, but this evidence supports only a different conspiracy, converting the Liberty Resources customers from alleged victims of this conspiracy into co-conspirators. The problem is that the jury may misconceive a much greater harm by assuming a much larger conspiracy than actually existed. "Where there is no connection between users of the same product but the factfinder mistakenly believes there is a union of interest and criminal intent and an agreement to coordinate activity, the harm to the public will appear to be greater and the participants more culpable." *Id*. at 843.

The jury in Wickline is at risk of confusing the alleged Wickline-client conspiracies with the alleged Wickline-Browning conspiracy related to the BMW card as part of the wire fraud and mail fraud conspiracies. This is especially true with the BMW card implicating Browning and Chad Wickline in a distinct conspiracy, but not Dan Wickline. However, the indictment alleges a conspiracy between Dan and Chad Wickline. Therefore, as to Dan Wickline, the BMW credit card evidence supports a distinct conspiracy unrelated to Dan Wickline, and as to Chad Wickline, the evidence supports a distinct conspiracy which if allowed into evidence would improperly expand the scope of the indictment and may improperly be used to convict Chad.

The *Swafford* court described this problem as a "spillover problem." *Id*. "Here, the variance created the following problem: instead of having to prove each of the multiple

6

conspiracies, which was necessary due to the failure to demonstrate a single conspiracy, the government offered evidence only as to the alleged single criminal enterprise." *Id*. "This distributive application of evidence diminishes the level of proof necessary for convictions based on the multiple conspiracy theory proven at trial. Under such circumstances, it is impossible to say that the variance did not affect the outcome at trial." *Id*. Therefore, the use of this conspiracy evidence constitutes an improper variance and the evidence should be excluded.

## **CONCLUSION**

WHEREFORE, the defendants request this court exclude anticipated testimony of government witnesses as to alleged uncharged conspiracies between the Wicklines and customers, including, but not limited to, (1) Chad Wickline's BMW credit card and the testimony of a BMW witness and Mark Browning and the use of that card; (2) Mark Browning's use of a credit card for technical support services from Ceranet; and (3) evidence of card usage at Las Vegas hotels.

Respectfully submitted this 29th day of June, 2008.

        THE BERNHOFT LAW FIRM, S.C.
        Attorneys for the Defendant, Chad Wickline

        By:   /s/ Robert G. Bernhoft
               Robert G. Bernhoft

        207 East Buffalo Street, Suite 600
        Milwaukee, Wisconsin 53202
        (414) 276-3333  telephone
        (414) 276-2822  facsimile
        rgbernhoft@bernhoftlaw.com


        ROSS M. BABBITT CO., LPA
        Attorney for the Defendant, Dan Wickline

        By:   /s/ Ross M. Babbitt
               Ross M Babbitt (0072946)

        700 St. Clair Avenue
        Hoy Block, Suite 300
        Cleveland, Ohio 44113
        (216) 623-6346  telephone
        (216) 274-9683  facsimile
        rbabbitt@babbitt-lawfirm.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:07-CR-121 |
| v. ) | |
| ) | |
| CHAD WICKLINE and ) | JUDGE ALGENON MARBLEY |
| DAN WICKLINE, ) | |
| ) | |
| Defendants. ) | |

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that true and correct copies of the foregoing document and attachment were served via the Court's ECF system to opposing counsel or parties at the following e-mail addresses:

| Opposing Counsel | E-mail address |
|---|---|
| Asst. U.S. Attorney Marcia Harris | marcia.harris@usdoj.gov |

Dated on June 29, 2008.

                                              /s/ Robert G. Bernhoft
                                                 Robert G. Bernhoft